# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANNETTE RIVERA<br><br>    v.<br><br>PETSMART, INC. and MEDICAL MANAGEMENT INTERNATIONAL, INC. | CIVIL ACTION<br><br>NO. 18-2121 |
|---|---|

## MEMORANDUM RE: MOTION TO DISMISS AND COMPEL ARBITRATION

**Baylson, J.**                                                                           **October 17, 2018**

## I. Introduction

In this case, Plaintiff Annette Rivera alleges that Defendant Medical Management International, Inc. ("MMI") wrongfully terminated her employment on January 26, 2017 due to pregnancy discrimination. Plaintiff seeks damages to redress her injuries under:

1. **Count One**: Title VII of the Civil Rights Act of 1964 ("Title VII");
2. **Count Two**: Pregnancy Discrimination Act; and
3. **Count Three**: Pennsylvania Human Relations Act ("PHRA").

Presently before this Court is Defendant's Motion to Dismiss and Compel Arbitration pursuant to the Federal Arbitration Act ("FAA") and the Mutual Arbitration Agreement ("the Agreement") entered into by Plaintiff and MMI (d/b/a Banfield Pet Hospital). For the reasons discussed below, Defendant's Motion is granted.

## II. Factual Background

The factual background is as follows. Defendant hired Plaintiff as a veterinary assistant in June 2015. (ECF 1, Compl. ¶ 10.) On June 1, 2015, prior to the commencement of Plaintiff's employment, the parties executed the Agreement, which applies to disputes arising from an employee's "hiring, terms or conditions of employment, employee relations, performance,

discipline, compensation, separation of employment, or any other issue covered by the employer-employee relationship." (ECF 5, "Mot. to Dismiss," Ex. A, at 1.) The "Covered Claim(s)" "include[], but [are] not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Equal Pay Act, . . . and/or claims under similar applicable federal and state laws governing civil rights, unlawful employment practices, wage and hour, benefits, family and medical leave, [and] disability." (Id.) Further, the Agreement states that the provision describing claims covered "is intended to be broadly construed and include any employment related claim under federal, state, or local laws." (Id.)

In November 2016, when Plaintiff was approximately four months pregnant, Plaintiff's job involved "holding and restraining sometimes unruly animals." (Compl. at ¶¶ 11–12.) Due to her advancing pregnancy, Plaintiff asked Defendant's office manager to be assigned more desk work, to which the office manager responded that she would "let [Plaintiff] know." (Id. at ¶¶ 12–13.) Plaintiff asked the office manager for "light desk duty" two additional times and did not receive a response. (Id. at ¶ 14.) In mid-January 2017, the office manager asked Plaintiff to provide a doctor's note describing Plaintiff's requested accommodations. (Id. at ¶ 15.) Plaintiff provided Defendant with a note from her midwife stating that Plaintiff could not lift more than twenty-five pounds and should be assigned to desk duty to allow Plaintiff to sit down more frequently. (Id. at ¶ 16.) After Defendant received the note, Defendant continued to require Plaintiff to handle "large animals." (Id. at ¶ 17.)

On January 26, 2017, Defendant terminated Plaintiff's employment for "making too many mistakes." (Id. at ¶ 18.) Plaintiff had two prior write-ups prior to her termination: one for

lateness during the Philadelphia transportation strike in 2016 and one for leaving a leash on an animal while in its cage. (Id. at ¶ 19.)

## III. Procedural History

Plaintiff filed the Complaint in this case on May 21, 2018 (ECF 1). On June 21, 2018, Plaintiff filed a Notice of Voluntary Dismissal of claims against Defendant PetSmart, Inc. with prejudice (ECF 2). On July 24, 2018, Defendant filed a Motion to Dismiss and Compel Arbitration pursuant to the FAA (ECF 4, 5). Defendant contends that the Agreement to arbitrate employment related disputes is valid, and that Plaintiff's claims fall within the scope of the Agreement. (Id.) On August 7, 2018, Plaintiff filed an Opposition to Defendant's Motion (ECF 6, "Opp'n"). In the Opposition, Plaintiff contends that the Agreement is invalid because it lacks "mutuality of consideration" and is an adhesion contract; the Agreement is unenforceable because it is ambiguous and unclear as to whether attorneys' fees and costs, damages available to Title VII plaintiffs, are recoverable at arbitration; and Plaintiff's pregnancy discrimination claim does not fall within the scope of the Agreement. (Id. at 1–2, 6[1].)

## IV. Legal Standard

The FAA, which governs the arbitration and arbitrability of disputes, provides that as a matter of federal law, "[a] written provision" in a commercial contract evidencing an intention to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because the FAA reflects a strong federal policy favoring arbitration, courts must "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). The FAA places arbitration agreements on equal footing with other contracts, and requires courts to

---

[1] Because Plaintiff's Opposition does not include page numbers, the Court refers to the page numbers of the ECF filing.

3

enforce them according to their terms. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010). Therefore, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

To decide a motion to compel arbitration, the Court applies "the same standard it applies to a motion for summary judgment." Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009); cf. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773–74 (3d Cir. 2013) (citation omitted) (a motion to compel arbitration is reviewed under a motion to dismiss standard "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)"). The Court applies the summary judgment standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 528 (3rd Cir. 2009). Under this standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." Kaneff, 587 F.3d at 620. Further, "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."[2] Vilches v. Travelers Cos., 413 F. App'x 487, 491 (3d Cir. 2011) (internal quotation marks and citation omitted).

---

[2]  Plaintiff's Opposition recites the rule in Rent-A-Center that when a party challenges an arbitration agreement as a whole, rather than specifically contests the delegation of authority to the arbitrator, the gateway issue of arbitrability is to be decided by the arbitrator. (Opp'n, at 5–6) (citing 561 U.S. at 72); S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co., 840 F.3d 138, 144 (3d Cir. 2016) (applying Rent-A-Center in holding that the gateway issue of arbitrability was for the arbitrator to decide where the plaintiff challenged the contract as a whole, not the arbitration agreement therein); see also Caruso v. J&M Windows, Inc., No. 18-770, 2018 WL 4579691, at *5 (E.D. Pa. Sept. 24, 2018) (Baylson, J.) (compelling arbitration where plaintiff did not challenge the delegation of authority to the arbitrator to determine issues

## V. Discussion

To compel arbitration under the FAA, a court must conclude that: (1) the parties entered into a valid agreement to arbitrate; and (2) plaintiff's claims fall within the scope of the arbitration agreement. Century Indem. Co., 584 F.3d at 523. In determining whether there is a valid arbitration agreement, the Court applies "ordinary state-law principles that govern the formation of contracts." Id. at 524 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); see also Ellin v. Empire Today, LLC, No. 11-2312, 2011 WL 3792754, at *3, *8 (E.D. Pa. Aug. 24, 2011) (Baylson, J.) (granting motion to compel arbitration where plaintiff failed to show that the arbitration clause was unconscionable under Pennsylvania law).

### A. Validity of Agreement

Defendant argues that the Agreement is valid because it is clear and unequivocal and susceptible only to one interpretation–that it governs Plaintiff's claims because they are "employment related." (Mot. to Dismiss, at 4–5.) In response, Plaintiff contends that the Agreement is an unenforceable "contract for adhesion, and lacks consideration from MMI to [Plaintiff]." (Opp'n, at 1.) Plaintiff also argues that the Agreement is invalid because it is ambiguous with regard to the availability of attorneys' fees and costs to Title VII claimants. (Id. at 2.) Plaintiff does not allege any facts in support of these contentions.

---

of arbitrability); Davis v. Uber Techs., Inc., No. 16-6122, 2017 WL 3167807, at *5 (E.D. Pa. July 25, 2017) (Baylson, J.) (same); Pocalyko v. Baker Tilly Virchow Crouse, LLP, No. 16-3637, 2016 WL 6962875, at *4–5 (E.D. Pa. Nov. 29, 2016) (Baylson, J.) (same).

However, Rent-A-Center is not applicable here because the Agreement does not include a delegation clause. See Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 229 (3d Cir. 2012) (holding that it was proper for the court to decide issues of arbitrability because, unlike in Rent-A-Center, the agreement did not include a specific provision delegating the issue of arbitrability to the arbitrator).

5

### 1. Unconscionable

Though Plaintiff does not expressly challenge the Agreement as "unconscionable," Plaintiff's contentions that the Agreement is a "contract for adhesion" and may deprive Title VII plaintiffs of attorneys' fees and costs are challenges to its conscionability. See Quilloin, 673 F.3d at 231, 235. The Third Circuit applies state law to determine whether an arbitration agreement is unconscionable. Id. at 230. The Pennsylvania Supreme Court has held that the party challenging an arbitration agreement bears the burden of demonstrating that the agreement is both procedurally and substantively unconscionable. Ellin, 2011 WL 3792754, at *5 (citing Salley v. Option One Mortg. Corp., 925 A.2d 115, 119–20 (Pa. 2007)).

#### a. Procedurally Unconscionable

A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision." Quilloin, 673 F.3d at 235 (quoting Salley, 925 A.2d at 119). Under Pennsylvania law, an adhesion contract is generally procedurally unconscionable. Quilloin, 673 F.3d at 235 (citation omitted). An adhesion contract is a "standard-form contract prepared by one party, to be signed by the party in a weaker position, . . . who adheres to the contract with little choice about the terms." Id. (citation omitted). That said, "a contract of adhesion is not necessarily unenforceable; the party challenging it must also establish substantive unconscionability." Ellin, 2011 WL 3792754, at *5.

Plaintiff contends that the Agreement is a contract of adhesion, but does not allege any facts in support. (See Opp'n, at 1.) As Plaintiff has failed to explain why the Agreement is an unenforceable adhesion contract, Plaintiff has not met her burden of demonstrating that the Agreement is procedurally unconscionable.

#### b. Substantively Unconscionable

A contract is substantively unconscionable where it "unreasonably favors the party asserting it." Quilloin, 673 F.3d at 230 (quoting Salley, 925 A.2d at 119). A provision requiring both parties to pay their own expenses, including attorneys' fees, is generally unconscionable because limitations on attorneys' fees conflict with federal statutes that permit fee-shifting. Quilloin, 673 F.3d at 230–31.

Plaintiff contends that the Agreement is ambiguous, and therefore unenforceable, because it "fails to address the types and kinds of relief to which [Plaintiff] may be entitled in the event she prevails on her claims." (Opp'n, at 6.) Specifically, Plaintiff contends that the Agreement is ambiguous as to whether Title VII plaintiffs may recover attorneys' fees and costs. (Id. at 2.) The applicable "Fees and Costs" provision of the Agreement states:

> Each party shall be responsible for its own attorney fees and costs. However, if any party prevails on a statutory, common law or contract claim that, by applicable law entitles the prevailing party to payment of reasonable attorneys' fees and costs by the arbitrator, the arbitrator may award reasonable fees and costs in accordance with the law.

(Mot. to Dismiss, Ex. A, at 2.) The plain language of this provision appears to provide that, assuming Title VII entitles Plaintiff to attorneys' costs and fees, Plaintiff may be awarded them. However, as Plaintiff has not shown that the Agreement is procedurally unconscionable, the Court need not determine whether it is substantively unconscionable.[3]

---

[3] Even assuming the Agreement is ambiguous because it both permits the recovery of attorneys' fees and costs to prevailing claimants and requires "[e]ach party [to] be responsible for its own attorney fees and costs," "[t]he Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator." Quilloin, 673 F.3d at 231–32 (citing PacifiCare Health Sys. Inv. v. Book, 538 U.S. 401, 406–07 (2003) (holding that the ambiguity regarding whether the arbitration agreement at issue allowed a prevailing party to recover attorneys' fees was a question for the arbitrator, not the court)).

### 2. Lack of Consideration

Plaintiff's argument that the Agreement is invalid for lack of consideration similarly falls short.[4] Again, Plaintiff does not allege sufficient facts suggesting that there was no consideration from MMI to Plaintiff. (See Opp'n, at 1.)[5] Instead, Plaintiff refers to the rule that undermines her argument: "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced." Blair, 283 F.3d at 603.[6]

Plaintiff also does not dispute that she signed the Agreement below an acknowledgment that she "received and read or . . . had the opportunity to read this Arbitration Agreement" and that she "underst[ood] that this Arbitration Agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration . . . rather than to a judge and jury in court." (Mot. to Dismiss, Ex. A, at 3.) The Third Circuit has held that where a plaintiff has signed a similar acknowledgment stating that she read an arbitration agreement and agreed to arbitrate covered claims, the agreement is supported by sufficient consideration. See, e.g., Blair, 283 F.3d at 603–04 (arbitration provision was not unenforceable for lack of consideration where "[t]he language of the agreement [was] clear that both parties agreed to be bound to the arbitration agreement and [plaintiff] admitted to having read the language when she signed the acknowledgment shortly after receipt of the . . . arbitration clause.") As Plaintiff fails to allege that she or MMI did not agree to be bound by the Agreement, there is no genuine dispute that the Agreement is valid and enforceable.

---

[4] As Plaintiff's Opposition recites Third Circuit case law regarding contract formation under Pennsylvania law, the Court does not repeat these rules here. (Opp'n, at 3) (quoting Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002)).

[5] Though Plaintiff contends that the Agreement does not reflect her "manifest intent to arbitrate a claim of pregnancy discrimination" because it does not expressly state that it governs Pregnancy Discrimination Act claims, this contention pertains to the scope of the Agreement, discussed infra Section B, not its validity. (See Opp'n, at 6.)

[6] Plaintiff does not provide a citation for this quotation.

## B. Scope of the Agreement

The parties dispute whether Plaintiff's pregnancy discrimination claims are governed by the Agreement. (Mot. to Dismiss, at 5; Opp'n, at 6.) In determining the scope of the Agreement, the Court should keep in mind the federal policy favoring arbitration. Ellin, 2011 WL 3792754, at *6 (citing Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001)). There is a "presumption of arbitrability" when the provision is broadly drafted. Ellin, 2011 WL 3792754, at *6 (quoting Century Indem. Co., 584 F.3d at 524); but see CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 173 (3d Cir. 2014) ("[T]he presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract controls.").

A motion to compel arbitration of a particular dispute "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Ellin, 2011 WL 3792754, at *6 (quoting Century Indem. Co., 584 F.3d at 524). That said, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." Ellin, 2011 WL 3792754, at *6 (quoting Medtronic AVE, Inc., 247 F.3d at 55). To determine whether a claim falls within the scope of an arbitration agreement, a court's "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." Ellin, 2011 WL 3792754, at *6 (quoting Medtronic AVE, Inc., 247 F.3d at 55). A court begins this assessment by carefully analyzing the contractual language in the arbitration agreement at issue. CardioNet, 751 F.3d at 173.

Here, the Agreement contains the following relevant provisions:

**Final and Binding Arbitration:** Should a dispute arise between you and [MMI] with respect to your hiring, terms or conditions of employment, employee relations, performance, discipline, compensation, separation of employment, or any other issue covered by the employer-employee relationship that cannot be

> resolve by direct, personal communications . . ., both you and [MMI] . . . agree to submit the dispute to a final and binding arbitration . . . .
>
> This Agreement to arbitrate includes, but is not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Equal Pay Act, Sections 1981 through 1988 of Title 42 of the United States Code, . . . and any and all amendments to the foregoing statutes, and/or claims under similar federal and state laws governing civil rights, unlawful employment practices, wage and hour, benefits, family and medical leave, disability, and claims under common law . . . . This provision is intended to be broadly construed and include any employment related claim under federal, state, or local law.

(Mot. to Dismiss, Ex. A, at 1–2.) Defendant contends that Plaintiff's claims are subject to arbitration because the Title VII claim (Count One) is expressly included in the definition of "Covered Claim(s)" in the Agreement, and Plaintiff's claims under the Pregnancy Discrimination Act (Count Two) and the PHRA (Count Three) are claims "under similar applicable federal and state laws governing civil rights [and] unlawful employment practices" covered by the Agreement. (Mot. to Dismiss, at 5, Ex. A, at 1.)

In response, Plaintiff argues that because the Agreement includes a list of statutes under which "Covered Claim(s)" arise, and the Pregnancy Discrimination Act is not on that list, the Agreement does not cover Plaintiff's Pregnancy Discrimination Act claim. (Opp'n, at 6.) Specifically, Plaintiff argues that pursuant to the "canon of construction, expression [sic] unius exclusion alterius (the expression of one is the exclusion of the other), the [Agreement] fails to demonstrate [Plaintiff's] manifest intent to arbitrate a claim of pregnancy discrimination." (Id.)[7] Plaintiff does not dispute that the Title VII and PHRA claims fall within the scope of the Agreement.

---

[7] Plaintiff does not provide any examples of cases applying this principle in the context of arbitrability.

However, the Agreement is broad in scope, as it does not limit the claims covered to those expressly identified. Rather, the Agreement requires the parties to arbitrate "any employment related claim under federal, state, or local law," which "includes, but is not limited to" claims under several employment-related statutes. (Mot. to Dismiss, Ex. A, at 1.)

Courts within the Third Circuit have broadly construed arbitration clauses that include phrases such as "includes, but is not limited to." See, e.g., Chassen v. Fidelity Nat'l Fin., Inc., 836 F.3d 291, 304 (3d Cir. 2016) (remanding to compel arbitration where plaintiffs' claims fell within the broad scope of arbitration clauses that "include[d], but [were] not limited to" examples of arbitrable matters); Zeller-Landau v. Sterne Agee CRT, LLC, No. 17-3962, 2018 WL 334970, at *4, *6 (E.D. Pa. Jan. 9, 2018) (Brody, J.) (granting motion to compel arbitration and stay proceedings where plaintiff's sex discrimination claims under Title VII, the PHRA, and the Equal Pay Act fell within the scope of the broad arbitration provision that required arbitration of "any claim, dispute, or controversy that ar[o]se[] out of or related to Employee's employment . . . or the termination of that employment" and that "include[d] without limitation" examples of claims subject to arbitration). Further, judges in the Eastern District of Pennsylvania have determined that statutory claims such as those brought by Plaintiff fall within the scope of arbitration clauses in employment agreements. See Zeller-Landau, 2018 WL 334970, at *5 (listing cases). In light of the presumption of arbitrability under the FAA, this Court concludes that Plaintiff's claims fall within the scope of the Agreement.

Although the Agreement does not require Plaintiff to arbitrate all actions against MMI,[8] and the "Final and Binding Arbitration" provision lists examples of claims covered, the

---

[8] The Agreement expressly exempts certain claims from arbitration: "[I]f, for any reason, the above waiver of a class, collective, or representative action is found to be unenforceable or invalid, then any such class, collective or representative action shall be litigated and decided in a

Agreement does not limit the claims subject to arbitration to those listed. Because Plaintiff's claims are "employment related claim[s] under federal, state, or local law," they fall within the scope of the broad Agreement. (See Mot. to Dismiss, Ex. A, at 1.) Nothing in the Agreement provides "positive assurance that the arbitration [agreement] is not susceptible of an interpretation" that the Pregnancy Discrimination Act is a "federal . . . law[] governing . . . unlawful employment practices" or that Plaintiff's claims arising from her allegedly unlawful termination are "employment related claim[s] under federal, state, or local law." See Century Indem. Co., 584 F.3d at 524. Accordingly, Plaintiff's claims are subject to arbitration.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss and Compel Arbitration will be granted.

O:\CIVIL 18\18-2121 Rivera v PetSmart\18cv2121 Memo re MTD and Compel Arb.docx

---

court of competent jurisdiction, and not in arbitration. . . . Nothing in this Agreement prohibits you from filing a complaint with the EEOC or any other federal, state or local agency designated to investigate complaints of unlawful employment practices. . . . This Agreement also does not cover claims for injunctive relief to protect confidential information or to enforce restrictive covenants or for industrial injury or worker's compensation claims . . . ." (Mot. to Dismiss, Ex. A, at 2.)